SUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| DAVID W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:22-cv-00033-RLY-MPB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

David W. appeals the Social Security Administration ("SSA") denial of his petition for Disability Insurance Benefits ("DIB"). United States District Judge Richard L. Young referred this matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 11). For the reasons that follow it is recommended that the Commissioner's decision denying David W. benefits be **AFFIRMED**.

**I.   BACKGROUND**

David W. applied for DIB on July 2, 2020, alleging disability beginning August 1, 2014, due to problems with right leg burns/pain chronic, numbness in right leg, degenerative disc disease in back, collapsed discs in back, and chronic back pain. (Docket No. 6-6 at ECF p. 13). His date last insured was June 30, 2019. (Docket No. 6-2 at ECF p. 24). His claim was denied initially, on reconsideration, and on June 3, 2021, after a hearing[1] before the ALJ. (Docket No. 6-2 at ECF pp. 24-34). After the Appeals Council denied David W.'s request for review (*Id.* at ECF p. 2), he filed the instant litigation. (Docket No. 1).

---

[1] This hearing was held telephonically due to the COVID-19 pandemic. (Docket No. 6-2 at ECF p. 24)

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 416.920(a) and concluded that David W. was not disabled. (Docket No. 6-2 at ECF pp. 24-34). Specifically, the ALJ found that:

- At Step One, David W. had not engaged in substantial gainful activity during the period from his alleged onset date of August 1, 2014, through his date last insured of June 30, 2019. (*Id.* at ECF p. 26).

- At Step Two, David W. had "the following severe impairments: lumbar degenerative disc disease status post discectomy and revision discectomy; post-laminectomy syndrome; obesity; left plantar fasciitis; and osteoarthritis of right 1st interphalangeal joint" (*Id.*)

- At Step Three, David W. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at ECF p. 27).

- After Step Three but before Step Four, David W. had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except he should never climb ladders, ropes, and scaffolding, but can occasionally climb ramps and stairs. The claimant could occasionally balance, stoop, kneel, crouch, and crawl. The claimant could frequently finger with the right upper extremity." (*Id.*).

- At Step Four, David W. was unable to perform any past relevant work. (*Id.* at ECF p. 32).

- At Step Five, considering David W.'s "age [45 years old as of date last insured], education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" including routing clerk, cashier II, and sales attendant. (*Id.* at ECF pp. 33).

## II.   APPLICABLE LAW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.*

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the Court gives the ALJ's subjective symptom analysis special deference overturning it only if it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating in sequence:

> (1) Whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2008). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The

burden of proof is on the claimant for Steps One through Four, but shifts to the Commissioner at Step Five. See *Clifford,* 227 F.3d at 868.

When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. ANALYSIS

David W. makes two arguments: (1) that the ALJ erred at Step two and later, in his RFC analysis, by failing to discuss his right knee pain associated with his prepatellar bursitis and internal derangement and the potential limitations associated with that impairment and (2) by providing an insufficient subjective symptom analysis. The Court addresses each argument in turn.

**A. Prepatellar Bursitis and Internal Derangement**

David W. argues that the ALJ ignored any evidence of his right knee pain with prepatellar bursitis and internal derangement and did not even determine if it was a medically determinable impairment at Step two, which he argues was particularly harmful because the medical evidence supported a walking limitation due to the impairment. Therefore, he continues, the hypothetical question posed to the vocational expert based on this RFC is fundamentally flawed and does not include all of the limitations supported by medical evidence in the record. (Docket No. 8 at ECF pp. 15-20).

The Commissioner concedes that the ALJ did not address this medical evidence but argues that the omission was not an error and, even if it was, that the error was harmless. She further argues that the prepatellar bursitis and internal derangement was limited two treatment

visits, with only one of those visits occurring prior to the date last insured. Finally, she argues that David W. has failed to establish what additional limitations this impairment would support that were not already in the record, particularly given the state-agency physicians considered this medical evidence, and there were no medical opinions in the record more limiting than the ALJ's ultimate RFC. (Docket No. 9 at ECF pp. 5-12).

    David W.'s reply largely rearticulates general legal positions but does argue that it is impossible to trace the path of the ALJ's reasoning as to the right knee prepatellar bursitis and internal derangement because the ALJ provides no reasoning.

    The Court summarizes the medical evidence related to David W.'s right knee. Although David W. did not allege prepatellar bursitis with internal derangement or right knee pain, generally, in his disability application, the record contains two brief references to the same. First, in April 2019, David W. saw Dr. Scott Stine, his primary care physician, for his complaints of right knee pain and swelling after kneeling down on a concrete floor. (Docket No. 6-7 at ECF p. 53). David W. had noticed the symptoms over the past four days. (*Id.*). Upon examination, Dr. Stine noted that he had a normal gait and diagnosed David W. with prepatellar bursitis (inflammation of bursae, fluid-filled sacs that cushion the kneecap) in the right knee; prescribed Mobic (an anti-inflammatory used to treat arthritis) for pain; and instructed him to use ice or heat on his knee. (*Id.* at ECF p. 55).

    The next, and only other, note referencing David W.'s right knee pain was in August 2019, after the date last insured. (Docket No. 6-7 at ECF p. 57). David W. again complained about his right knee pain. (*Id.*). He stated that while the Mobic, prescribed at the previous visit, did help some, he was now out of medication. (*Id.*). David W. reported that his pain was worse now, more pain on the inside of the knee, and increased with walking. (*Id.*). While the history of

present illness section of the note indicated that David W. had a decreased range of motion and is having a hard time walking (i.e., limping), the physical exam noted a normal gait. (Docket No. 6-7 at ECF pp. 58-59). Dr. Stine further diagnosed internal derangement of the right knee and ordered imaging. (Docket No. 6-7 at ECF p. 59). A subsequent x-ray was negative for any abnormal findings. (Docket No. 6-7 at ECF p. 70).

In August and December 2020, state-agency reviewing medical consultants Dr. J. Sands and Dr. J. V. Corcoran, respectively, indicated that David W. could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk each for a total of six hours in an eight-hour workday; occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and frequently finger with the right hand (Docket No. 6-3 at ECF pp. 7-8, 19-21).

At step two, the ALJ must determine whether the claimant has any medically determinable impairments based on the objective medical evidence. 42 U.S.C. § 423(d)(1)(A). However, any error at step two with respect to these right knee diagnoses was harmless. The ALJ here determined that David W. had several severe impairments and, therefore, proceeded to the next step of the sequential evaluation process. (Docket No. 6-2 at ECF p. 26). Thus, whether the ALJ should have found David W.'s right knee impairment to be a severe, or, for that matter, a non-severe impairment "is of no consequence with respect to the outcome of the case." *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

Furthermore, substantial evidence supports the ALJ's assessment of David W.'s functional abilities, particularly, as relevant here, to his ability to stand or walk, off and on, for a total of approximately 6 hours of an 8-hour workday. *See* SSR 83-10, 1983 WL 31251 ("[T]he

full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). The ALJ determined that David W. could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk each for a total of six hours in an eight-hour workday; occasionally climb ramps and stairs never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and frequently finger with the right hand. (Docket No. 6-2 at ECF p. 27).

In arriving at that finding, the ALJ expressly considered David W.'s testimony, as addressed further in the next issue. In addition, David W. cites no evidence of any limits related to his right knee that the ALJ left out, and cites no medical source opinions that the ALJ failed to consider. Indeed, in formulating his RFC finding, it is evident that while the ALJ did not discuss the two aforementioned treatment notes, he did consider David W.'s reported complaints related to his right leg pain and numbness, his lower back pain, and the treatment he received for it. (Docket No. 6-2 at ECF pp. 27-32). For instance, the ALJ noted David W.'s visits for burning down the bilateral legs in November 2016 (*Id.* at ECF p. 29, citing Docket No. 6-7 at ECF p. 81); chronic right leg pain in June 2017 (*Id.*, citing Docket No. 6-7 at ECF p. 86); and burning sensation down right leg at an emergency department visit in October 2017 (*Id.*, citing Docket No. 6-7 at ECF p. 96). Moreover, like the April 2019 exam, these earlier exams regularly showed normal ambulation without assistance. *See, e.g.*, (Docket No. 6-7 at ECF p. 88 (6/11/17 visit: "Physical exam" "Lower extremity strength and reflexes are normal")); (Docket No. 6-7 at ECF p. 90 (7/5/17 visit: "Normal gait, symmetrical reflexes)); (Docket No. 6-7 at ECF pp. 96, 98 (10/23/17 visit: "Patient walked into emergency room with no assistance . . . He has no difficulty with gait.")); (Docket No. 6-7 at ECF p. 28 (2/22/18 visit: "Physical exam" "Normal gait.")); (Docket No. 6-7 at ECF p. 7 (5/16/2018 visit: "gait normal, both sides, full weight bearing, no

assistive device")); (Docket No. 6-7 at ECF p. 111 (9/11/18 visit: "Physical" "Patient walks without a limp. No assistive device.")).

And, other than the post-date-last-insured August 2019 time period where it indicated that David W. was limping, the exams also regularly showed normal ambulation. *See, e.g.*, (Docket No. 6-7 at ECF p. 15 (12/19/19 visit: Present for CDL exam, states doing well, "normal range of motion," "coordination normal.")); (Docket No. 6-7 at ECF p. 216 (6/10/2020 visit: "ambulating normally")), *but see* (Docket No. 6-7 at ECF p. 239) (11/5/2020 visit: "Physical Exam" "Ambulation: limited ambulation")). This is substantial evidence that supports the ALJ's finding that David W.'s "ongoing normal gait with no assistive device and obesity in conjunction with his most recent imaging, normal posture, positive straight leg raise on the right, and intermittently decreased range of motion of the spine, with occasional tenderness on exam supported the ongoing restriction to light exertional work." (Docket No. 6-2 at ECF. 31). Moreover, these findings of normal ambulation prior to, during, and after the right-knee-related visits disproves David W.'s arguments that the ALJ's omission of explicitly discussing this evidence had meaningful implication to his ability to walk and stand.

Notably, no medical source assessed greater limitations than those imposed by the ALJ. The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *See also Suzanne S. v. Saul*, 1:19-cv-1365-MJD-JPH, 2019 WL 6711497, at *5 (S.D. Ind. Dec. 10, 2019) (holding the ALJ did not commit reversible error in assessment of the claimant's RFC based on allegations of fatigue where no medical source opined greater limitations than the ALJ credited in her RFC finding).

Here, the ALJ found the state-agency reviewing medical consultants' opinions persuasive and the record contains no other medical opinion. The consultants indicated that David W. could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, and/or walk for a total of six hours in an eight-hour workday; occasionally climb ramps and stairs never climb ladders, ropes, or scaffolds; occasionally balance stoop, kneel, crouch, and crawl; frequently finger with the right hand (Docket No. 6-3 at ECF pp. 7-8, 19-21). Among the evidence these physicians cited in "Findings of Fact and Analysis of Evidence," Dr. Sands included both of the aforementioned visits. (Docket No. 6-3 at ECF p. 5 ("8/8/19 R Knee Xray-no acute osseous abnormality 4/15/19 HPI – here for right knee swelling and tenderness. No injury but has been on concrete floor . . . Neuro – *normal gait*, symmetrical reflexes. Alert, oriented, appropriate" (emphasis added)). Dr. Sands further included the April 2019 records in his "RFC-Additional Explanation" section (Docket No. 6-3 at ECF p. 8) as did Dr. Corcoran (Docket No. 6-3 at ECF p. 21). Dr. Sands's "Findings of Fact and Analysis of Evidence" further noted a later-dated January 2020 visit where, once again, David W. had a normal gait. (Docket No. 6-3 at ECF p. 5). David W.'s brief does not acknowledge these state-agency consultants' considerations of the right knee records nor that there ultimate opinions were adopted by the ALJ.

David W. bears the burden of production and persuasion at steps one through four. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of existence thereof."); 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are . . . disabled."); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). Reviewing courts are strictly limited to the reasons provided by the agency. *Sec. and Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 95 (1943); *see also DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020) (*Chenery* doctrine requires agency to "defend its

actions based on the reasons it gave when it acted" in the interest of promoting agency accountability, instilling confidence in agency decisions, and maintaining an orderly process of review). But, in narrow circumstances harmless error may provide an exception to the *Chenery* doctrine. *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003). The exception is available if the reviewing court can predict with great confidence, based on overwhelming support in the record, that the agency will reinstate its decision. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Here, David W. points to no evidence of any additional limitations that were supposedly ignored and cites no medical source opinions that the ALJ failed to consider. Thus, for the reasons explained above, the Court finds that any error was harmless.

**B. Subjective Symptom Analysis**

Next, David W. argues that remand is required to allow the ALJ to revisit the credibility finding and justify it with specific reasons supported by the record. David W.'s argument is a bit difficult to follow because it mainly summarizes SSR 16-3p, the case law, and the evidence in David W.'s record, with only some application to the ALJ's actual findings. Nonetheless, the Court understands David W.'s argument to be that the ALJ did not sufficiently articulate or support his subjective symptom assessment. For example, he argues that the ALJ repeatedly relied on "normal" findings in the medical records, but failed to address how David W.'s activities of daily living illustrated that his back-pain symptoms waxed and waned. (Docket No. 8 at ECF pp. 22-23). He further argues that the severity of his back pain was supported both by the objective imaging, including MRIs and EMG, and his chronic pain treatment. (Docket No. 8 at ECF pp. 23-24). He critiques the ALJ for failing to address the chronic pain treatment, which supported his allegations of disability, and for merely summarizing the evidence without

providing analysis. (*Id.* at ECF pp. 24-25). Finally, he argues that the ALJ erred in failing to credit his 21+ year work history. (*Id.* at ECF pp. 25-26).

The Commissioner responds that the ALJ reasonably considered the relevant factors under SSR 16-3p and cited substantial evidence as it applied to those factors. (Docket No. 9 at ECF p. 14). She argues there is no indication that the ALJ equated David W.'s activities of daily living with full-time work and, moreover, that the ALJ acknowledged the qualified manner in which he conducted his activities of daily living. Finally, she argues that a claimant's work history is just one of many factors under SSR 16-3p, and silence on this issue is not by itself grounds for remand. (*Id.* at ECF p. 18).

On reply, David W. argues the ALJ's activities of daily living assessment was harmful error and that his arguments do not improperly request a reweighing of the evidence.

The regulations describe a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). With regards to the second step, the ALJ should "carefully consider other evidence in the record" and the factors set forth in 20 C.F.R. § 404.1529(c)(3). *Id.* These factors include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) the factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and (5) treatment and measures, other than medication, an individual has received or

taken for relief of pain or other symptoms. *Id.* The ALJ needs to discuss only the factors "pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304, at *8. An ALJ's credibility determination is not patently wrong if it cites to specific reasons in the record. *Burmester*, 920 F.3d at 510-511; *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016) (A credibility determination "tied to the evidence in the record" may not be disturbed as patently wrong.).

The ALJ found David W.'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that David W.'s statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Docket No. 6-2 at ECF p. 28). The ALJ considered David W.'s subjective statements regarding his symptoms and limitations, his daily living activities, and his treatment records. (Docket No. 6-2 at ECF pp. 23-25). The ALJ's evaluation was not patently wrong. First, the ALJ described his activities of daily living. (Docket No. 6-2 at ECF p. 28). David W. takes issue with the fact that in noting his activities of daily living, the ALJ did not address how it varies from day to day depending on his level of pain and how he is feeling. But, the decision shows that the ALJ appropriately considered David W.'s activities of daily living, including the qualified manner in which he conducted them. Take, for instance, the following discussion from the ALJ, which included discussion of his ADLs:

> David W. testified that his weight was generally the same now as it had been the last few years. He said he had back surgery in December 2013 and then another in July 2014. He said his degenerative disc and spinal stenosis stopped him from working. He said he was on pain medication for his back, but that he had no other side effects. He also indicated he used ice at times, which sometimes helped and at other times did not make a difference. He said he used a walker he was given by his mother, but it had not been prescribed. He said he used it to stand and walk as it was for balance. He

12

> indicated that he elevated his legs about every day or night. He said he got on the couch and used pillows as he did not sleep very well.
>
> [David W.] said he lived by himself. He testified that his parents lived a mile away and they would come over and see him. He said he also loved watching college basketball, though he could not play it. He said he liked to fish at his parents pond sometimes. He said he also went to the car show when it was in town once a year. He reported he used to work on cars, but due to his back he could not do much of that anymore, reporting he last washed his car a couple years ago and it was a slow process, so he kept it covered up. He said he had trouble bending over, showering, and putting on clothes, but did manage to do so independently. He said he did not garden and indicated his father mowed the lawn for him.

(*Id.*). This discussion shows that the ALJ cited examples of David W.'s activities of daily living and acknowledged the qualified manner in which he performed them. There is no indication that the ALJ equated David W.'s activities of daily living with full-time work or that he placed any undue emphasis on them. *See, e.g.*, *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) ("But an ALJ is not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities.").

Moreover, even if David W. was correct that the ALJ improperly assessed his activities of daily living, they are but one factor under SSR 16-3p. The ALJ's analysis of a claimant's allegations does not need to be flawless: "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (emphasis in original). Second, the ALJ also discussed the location, duration, frequency, and intensity of David W.'s pain or other symptoms, particularly as to his low back and right leg pain (*See, e.g.*, Docket No. 6-2 at ECF p. 29 ("[David W.] indicated he had back pain with numbness and burning down the bilateral legs); *Id.* at ECF p. 30 ("[David W.] had been experiencing

13

intermittent chronic low back pain since his initial fall injury in 2013); *Id.* ("[David W.] reported he had a burning sensation down his right leg[.]").

Third, the ALJ assessed factors that precipitate and aggravate the symptoms. For instance, the ALJ noted that David W.'s "ongoing obesity" supported restricting him to occasional climbing of ramps and stairs (Docket No. 6-2 at ECF p. 30). Fourth and fifth, the ALJ discussed the type, dosage, effectiveness, and side effects of David W.'s medications, as well as other treatments he received beyond medication. (*See, e.g.*, Docket No. 6-2 at ECF p. 28c ("[David W. said he was on pain medication for his back, but that he had no negative side effects. He also indicated he used ice at times[.]"); *Id.* at ECF p. 29 ("[David W.] was given Mobic to take for left heel pain."); *Id.* ("[David W.] reported chronic right leg pain that was usually controlled with Tramadol, but he was out of medication[.]"); *Id.* ("[David W.] reported he got a right hip injection approximately 2 weeks ago and it helped some[.]"); *Id.* at ECF p. 30 ("He was on Tramadol as needed."). Finally, the ALJ recognized other measures David W. did to relieve his pain or other symptoms, including using ice, elevating his legs, and using a walker for balance, although it was not prescribed. While David W. critiques the ALJ's assessment for failing to note his unsuccessful physical therapy attempts or the exacerbation of his pain and symptoms from sitting/standing for too long,[2] two brief reports of past physical therapy attempts is not enough to negate the ALJ's substantial subjective symptom assessment discussion.

The ALJ was not selective in his analysis of the record evidence. He did not consider only isolated, normal or mild findings, nor is there any indication that he, with the exception of

---

[2] One of the two reports that David W. argues that the ALJ failed to consider was from August 2020, well after the date last insured. (Docket No. 6-7 at ECF p. 235) (noting that David W. reported to his doctor that he had difficulty sitting or standing for long and was observed to not sit still while in the doctor's office).

14

the two right knee-related appointments discussed above, disregarded any entire line of evidence. *See Carlson v. Shalala*, 999 F.2d 180 (7th Cir. 1993). David W.'s request here, in which he summarizes evidence he believes supports his allegation as to the severity of his lower back pain, amounts to an improper request for this court to "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Finally, David W. argues that the case must be remanded because the ALJ ignored his long work history. The record showed that David W. had a long work history prior to his alleged onset date. At the hearing, he testified that his prior employer, where he was a diesel mechanic, let go of him in 2014 after his December 2013 and 2014 surgeries. (Docket No. 6-2 at ECF pp. 51-52) (Q: "What happened with the work at MacAllister's? A: "Well, I had two back surgeries, and I never did recover, and they got rid of me."). The Seventh Circuit has acknowledged that a claimant with a good work record is entitled to substantial credibility. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (collecting cases). However, the Seventh Circuit has also held that "work history is just one factor among many, and it is not dispositive." *Id.*; *see also* SSR 16-3p, 2016 WL 1119029, at *6 (Mar. 16, 2016) (ALJ should consider claimant's "prior work record and efforts to work" in assessing subjective symptoms); *cf Stark v. Colvin*, 813 F.3d 684, 688-89 (7th Cir. 2016) (acknowledging that "[a]n ALJ is not statutorily required to consider a claimant's work history" but finding that under the circumstances of that case, the ALJ should have acknowledged the claimant's efforts to continue work while undergoing numerous surgeries to relieve significant pain).

In *Loveless*, the court found no reversible error because the ALJ acknowledged the claimant's testimony that he could not work but "reasoned that this contention was contradicted

15

by the claimant's activities of daily living, his routine and conservative medical treatment since 2011, and many earlier reports of minimal or no pain." *Id.* The Seventh Circuit held that "the ALJ's silence [as to the claimant's work history] is not enough to negate the substantial evidence supporting the adverse credibility finding." *Id.* Thus, contrary to the plaintiff's contentions, the ALJ was not required to single out plaintiff's work history as a substantial factor in his subjective symptom analysis.

Accordingly, the Court concludes that the ALJ's SSR 16-3p credibility assessment is tied to substantial evidence in the record and is not patently wrong, thus the Court will not disturb that assessment. *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

## IV. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the court **AFFIRM** the ALJ's opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 21st day of February, 2023.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.